STATE v. PIRL WILLARD KNIGHT.

(Filed 20 January, 1967.)

**1. Constitutional Law § 29; Indictment and Warrant § 2—**

Under the Fourteenth Amendment to the Federal Constitution and under Article I, §§ 13 and 17 of the State Constitution, the statutory exclusion of a group or class of persons from eligibility for jury service will not render invalid an indictment returned by a grand jury selected in accordance with State law, so long as there is no reasonable basis for the conclusion that the ineligible group or class would bring to the deliberations of the jury a point of view not otherwise represented upon it, at least where the defendant is not a member of the excluded group or class.

**2. Same; Jury § 3—**

There is no reasonable basis for the conclusion that the groups or classes of persons exempted from the duty to serve on grand or petit juries by G.S. 9-19, G.S. 90-45, G.S. 90-150, and G.S. 127-84 would bring to the deliberations of the jury any point of view with reference to the trial of criminal prosecutions which would be otherwise unrepresented, and therefore the exclusion of such groups or classes does not offend constitutional

requirements that juries be drawn impartially from a cross section of the community.

**3. Same—**

Statutory exemptions of designated groups and classes from the duty to serve on grand and petit juries provide merely that one in such designated class or group may assert his or her statutory right of exemption, and do not render members of such groups or classes ineligible to serve.

**4. Constitutional Law § 19—**

Article I, § 7, of the State Constitution, does not preclude the granting of an exemption to a particular group or person in the furtherance of the public interest or convenience, but merely precludes the granting of such exemption to a group or to a person for the peculiar benefit of such group or person.

**5. Same; Constitutional Law § 29; Indictment and Warrant § 2; Jury § 3—**

The public has a substantial interest in exemption of mothers of children under the age of 12, women with sick husbands who require their care, city firemen, druggists, registered nurses, physicians, and ministers from the duty to serve on grand and petit juries, and therefore the statutory exemption of these groups and classes from the duty to serve on juries does not violate Article I, § 7, of the State Constitution.

APPEAL by the State from *Latham, S.J.,* at the 5 September 1966 Conflict Criminal Session of MECKLENBURG.

An indictment in proper form charging the defendant with murder was returned "a true bill" by the grand jury. Upon motion of the defendant, the court entered its judgment quashing the indictment.

The ground upon which the motion was made was that the Clerk has regularly and systematically exempted from service upon the grand jury and the petit jury those persons who applied to him for such exemption and who were declared entitled to such exemption by the following sections of the General Statutes of North Carolina: G.S. 9-19, 90-45, 90-150, and 127-84; prior to the selection of the grand jury which returned this bill of indictment, the Clerk exempted from service, pursuant to such statutes, prospective grand jurors who were qualified to serve as such within the meaning of the Constitution of North Carolina, Article I, § 13; similarly qualified persons have been so exempted by the Clerk from service upon each petit jury called to serve at a criminal session of the Superior Court of Mecklenburg County since the return of the indictment against the defendant by the grand jury; and the said statutes granting such exemption are in violation of the Constitution of North Carolina, Article I, §§ 7 and 17.

The motion to quash was heard upon a stipulation of facts, which may be summarized as follows:

At all times pertinent to this appeal, the selection of the names of persons to serve as jurors in the criminal courts of Mecklenburg County has been made in accordance with the procedure prescribed in the General Statutes. The Clerk has regularly and systematically exempted from jury duty those persons who have applied therefor to him and who qualify for such exemption under one or more of the above statutes. Members of the grand jury are selected from a list of names of persons called to serve on criminal jury duty after the names of persons so excused by the Clerk have been removed. Nine members of the grand jury, which returned the indictment against this defendant, were drawn from the list of jurors for the 3 January 1966 criminal session and nine were drawn from the list for the 4 April criminal session.

Twelve persons whose names were originally on the list for the 3 January session were found to be exempt and their names were removed before the grand jury which indicted the defendant was chosen. Of these, nine were so exempted on the ground that they were mothers of children under the age of 12 years, one because she was needed to care for her sick husband, one because he was a city fireman, and one because he was a druggist. Seventeen persons were so exempted and excluded from the list for the 4 April session. Of these, 12 were so exempted because they were mothers of children under the age of 12 years, one because he was a city fireman, two because they were registered nurses, one because he was a doctor, and one because she was a minister.

The indictment against this defendant was returnable at the 6 June 1966 session. A total of 63 persons were so exempted from the list of jurors at that session and subsequent sessions, to and including the session of 5 September 1966. Of these, 45 were exempted because they were mothers with children under the age of 12 years, five because they were registered nurses, one because he was an attorney at law, one because he was a railroad conductor, one because he was a printer, two because they were doctors, one because he was a railroad engineer, one because he was a linotype operator, two because they were volunteer firemen, one because he was a minister, one because he was a member of the North Carolina Air National Guard, one because he was a train dispatcher, and one because he was a city fireman.

In support of the motion, William L. Stagg, attorney for the defendant, filed his affidavit, which is not controverted and which we treat as an addition to the stipulated facts. According to this affidavit, there reside in Mecklenburg County approximately the fol-

lowing numbers of persons who are engaged in occupations whose members are so exempt from jury service by the above statutes:

| | |
|---|---|
| Doctors | 300 |
| Dentists | 125 |
| Chiropractors | 12 |
| Druggists | 125 |
| Pilots | 500 to 1000 |
| Ministers | 150 |
| Funeral Directors | 32 |
| Embalmers | 16 |
| Postal Clerks | 1000 |
| Nurses | 800 to 1000 |

*Attorney General Bruton, Deputy Attorney General McGalliard and Staff Attorney White for the State.*
*Stagg & Reynolds for defendant appellee.*

LAKE, J. More than 60 years ago this Court stated clearly that Article I, § 13, of the Constitution of North Carolina, requires the sustaining of a motion to quash an indictment of a Negro who proves that the members of his race have been systematically excluded from the juries of the county in which he has been indicted. *State v. Peoples,* 131 N.C. 784, 42 S.E. 814. Since that time it has never been doubted by the courts of this State that the provisions of the Constitution of North Carolina, Article I, §§ 13 and 17, are to be so interpreted and that such systematic exclusion from the grand jury of persons, otherwise qualified, because of their race, requires, upon motion duly made, the quashing of an indictment returned against a member of that race by such grand jury irrespective of the fact that all members of the grand jury were, themselves, qualified jurors. *State v. Wilson,* 262 N.C. 419, 137 S.E. 2d 109; *State v. Perry,* 250 N.C. 119, 108 S.E. 2d 447; *Miller v. State,* 237 N.C. 29, 74 S.E. 2d 513.

Similarly, the Supreme Court of the United States in *Strauder v. West Virginia,* 100 U.S. 303, 25 L. ed. 664, and numerous subsequent decisions, has declared that the rights guaranteed by the Fourteenth Amendment to the Constitution of the United States are violated by the indictment of a defendant by a grand jury from which the members of the defendant's race have been excluded by a statute of the state, the Court there saying, "The constitution of juries is a very essential part of the protection such a mode of trial is intended to secure." In *Thiel v. Southern Pacific Company,* 328 U.S. 217, 66 S. Ct. 984, 90 L. ed. 1181, 166 A.L.R. 1412, dealing with

the selection of jurors in a federal court, the Court, speaking through Mr. Justice Murphy, said the "exclusion of all those who earn a daily wage cannot be justified by federal or state law," and, "The American tradition of trial by jury, considered in connection with either criminal or civil proceedings, necessarily contemplates an impartial jury drawn from a cross-section of the community." In *Strauder v. West Virginia, supra,* the Court observed, "Nor if a law should be passed excluding all naturalized Celtic Irishmen, would there be any doubt of its inconsistency with the spirit of the Amendment."

In *Fay v. New York,* 332 U.S. 261, 67 S. Ct. 1613, 91 L. ed. 2043, the Court held that the selection of the jury which tried the defendant from a "blue ribbon" list did not violate the rights of the defendant under the Fourteenth Amendment, saying, "No significant difference in viewpoint between those allegedly excluded and those permitted to serve has been proved and nothing in our experience permits us to assume it." In the *Thiel* case, *supra,* the Court said that its decision "does not mean, of course, that every jury must contain representatives of all the economic, social, religious, racial, political and geographic groups of the community." In the *Fay* case, *supra,* the Court, while reserving the question of whether the defendant's lack of identity with a group, excluded by state law or by systematic state action from jury service, would necessarily be a bar to his attack upon an indictment and conviction by a grand jury and a petit jury so selected, said, "This Court, however, has never entertained a defendant's objections to exclusions from the jury except when he was a member of the excluded class."

It would thus appear to be the meaning of the Fourteenth Amendment, as interpreted by the Supreme Court of the United States, that even the complete exclusion, by state law, of a group or class of persons from eligibility for jury service will not make invalid an indictment by a grand jury, selected in accordance with such state law, so long as there is no reasonable basis for the conclusion that the ineligible group or class would bring to the deliberations of the jury a point of view not otherwise represented upon it, at least where the defendant is not a member of the excluded group. We now so hold with reference to the Constitution of North Carolina, Article I, §§ 13 and 17, reserving for future determination the question of whether the identity of the defendant with a group so excluded from jury service will, alone, require a different result.

In the present case, the defendant was indicted for murder. The record does not indicate the race of either the defendant or the

alleged victim, or that either of them was the member of any other group or class of persons, and we have no knowledge of any such circumstance. The statutes of which the defendant now complains exempt from jury service persons who engage in certain occupations. These are as varied as physicians, railroad brakemen, funeral directors, ministers, gristmillers and linotype operators. There is no basis upon which we can conclude reasonably that persons engaged in any of these occupations, or those who are members of any of the other groups exempted from jury service by these statutes, would bring to the deliberations of a jury any point of view with reference to murder, or any other criminal offense, which would be otherwise unrepresented upon a grand or petit jury considering such matter.

We observe further that the statutes of which the defendant complains do not exclude anyone from jury service. Indeed, this record does not show that no member of any of the exempted classes served upon the grand jury which indicted this defendant. Each of these statutes merely provides for those in the designated classes or groups an exemption from the duty which would rest upon them apart from such statute. Nothing else appearing, a physician, a railroad brakeman, the mother of small children, or any member of any other group designated in any of these statutes, is eligible to serve upon any grand or petit jury, if summoned for such duty and if such person does not assert his or her statutory right of exemption. See: *People v. Rawn,* 90 Mich. 377, 51 N.W. 522; 24 Am. Jur., Grand Jury, § 12.

In sustaining the validity of a Florida statute providing for all women an absolute exemption from jury service, the Supreme Court of the United States said in *Hoyt v. Florida,* 368 U.S. 57, 82 S. Ct. 159, 7 L. ed. 2d 118:

> "Manifestly, Florida's § 40.01(1) does not purport to exclude women from state jury service. Rather, the statute 'gives to women the privilege to serve but does not impose service as a duty.' *Fay v. New York, supra.* It accords women an absolute exemption from jury service unless they expressly waive that privilege. This is not to say, however, that what in form may be only an exemption of a particular class of persons can in no circumstances be regarded as an exclusion of that class. Where, as here, an exemption of a class in the community is asserted to be in substance an exclusionary device, the relevant inquiry is whether the exemption itself is based on some reasonable classification and whether the manner in which it is exercisable rests on some rational foundation. * * *

"We cannot say that it is constitutionally impermissible for a State, acting in pursuit of the general welfare, to conclude that a women should be relieved from the civic duty of jury service unless she herself determines that such service is consistent with her own special responsibilities * * *

"It is true, of course, that Florida could have limited the exemption, as some other States have done, only to women who have family responsibilities. [Citing, among others, N.C. G.S. 9-19, without further comment.] But we cannot regard it as irrational for a state legislature to consider preferable a broad exemption, whether born of the State's historic public policy or of a determination that it would not be administratively feasible to decide in each individual instance whether the family responsibilities of a prospective female juror were serious enough to warrant an exemption."

Thus, so far as the requirements of the Due Process Clause of the Fourteenth Amendment to the United States Constitution are concerned, it is sufficient, in order to sustain a state statutory exemption, that there is reasonable ground for the Legislature to believe that the public interest and general welfare will be better served by the grant of the exemption than by subjecting the members of the exempted class to the duty imposed upon other members of the community. We so hold with reference to the provisions of Article I, § 17, of the Constitution of North Carolina.

Applying this principle to an administrative practice of granting exemptions to groups similar to those exempted by the statutes involved in the present matter, the Supreme Court of the United States, speaking through Mr. Justice Holmes in a unanimous decision, in *Rawlins v. Georgia*, 201 U.S. 638, 26 S. Ct. 560, 50 L. ed. 899, said:

"The nature of the classes excluded was not such as was likely to affect the conduct of the members as jurymen, or to make them act otherwise than those who were drawn would act. The exclusion was not the result of race or class prejudice. It does not even appear that any of the defendants belonged to any of the excluded classes. The ground of omission no doubt was that pointed out by the state court, that the business of the persons omitted was such that either they would have been entitled to claim exemption or that probably they would have been excused. Even when persons liable to jury duty under the state laws are excluded it is no ground for challenge to the array, if a sufficient number of unexceptionable persons are

present. *People v. Jewett*, 3 Wend. 314. *But if the state law itself should exclude certain classes on the bona fide ground that it was for the good of the community that their regular work should not be interrupted, there is nothing in the Fourteenth Amendment to prevent it. The exemption of lawyers, ministers of the gospel, doctors, and engineers of railroad trains, in short substantially the exemption complained of, is of old standing and not uncommon in the United States. It could not be denied that the State properly could have excluded these classes had it seen fit, and that undeniable proposition ends the case."* (Emphasis added.)

The defendant further relies upon Article I, § 7, of the Constitution of North Carolina, which provides, "No person or set of persons are entitled to exclusive or separate emoluments or privileges from the community but in consideration of public services." Obviously, this provision does not forbid all classifications of persons with reference to the imposition of legal duties and obligations. As long ago as *Bank v. Taylor*, 6 N.C. 266, this Court had before it the contention that this provision of our State Constitution made invalid a provision in a private act incorporating the Bank of New Bern, which authorized summary judgment and execution against one who defaulted in the payment of a note. Speaking through Hall, J., the Court said, "This objection will vanish when we reflect that this privilege is not a gift, but the consideration for it is the public good, to be derived to the citizens at large from the establishment of the bank." In *State v. Womble*, 112 N.C. 862, 17 S.E. 491, the Court, speaking through Avery, J., said:

"Though, as a rule, a grant of a special privilege, not conferred upon persons generally, to a particular man *for his own peculiar benefit,* naming him, may be unconstitutional, the Legislature unquestionably has the power, *in order to provide for the public convenience or to facilitate transportation of persons and property,* to confer on a designated person the right to build a bridge, or establish a ferry, with the power to charge tolls for the use of such crossings, *and, in addition, to exempt the servant who may be placed in charge, from all public burdens."* (Emphasis added.)

Again, in *Brumley v. Baxter*, 225 N.C. 691, 36 S.E. 2d 281, this Court, speaking through Devin, J., later C.J., said:

"The constitutional limitation contained in Art. I, sec. 7, has been frequently invoked by this Court to strike down legis-

lation conferring special privileges not in consideration of public service. [Citations omitted.] *But where the motivation is for a public purpose and in the public interest, and does not confer exclusive privilege legislation has been upheld."* (Emphasis added.)

Therefore, the limitation of Article I, § 7, like that of Article I, § 17, does not apply to an exemption from a duty imposed upon citizens generally if the purpose of the exemption is the promotion of the general welfare, as distinguished from the benefit of the individual, and if there is reasonable basis for the Legislature to conclude that the granting of the exemption would be in the public interest. Here, as in questions arising under the exercise of the police power pursuant to the requirement of due process of law, the principle to be applied is that declared by Moore, J., for the Court, in *State v. Warren*, 252 N.C. 690, 114 S.E. 2d 660, where it is said:

"The presumption is that an act passed by the Legislature is constitutional, and it must be so held by the courts unless it appears to be in conflict with some constitutional provision. [Citations omitted.] The legislative department is the judge, within reasonable limits, of what the public welfare requires, and the wisdom of its enactments is not the concern of the courts. As to whether an act is good or bad law, wise or unwise, is a question for the Legislature and not for the courts — it is a political question. The mere expediency of legislation is a matter for the Legislature, when it is acting entirely within constitutional limitations, but whether it is so acting is a matter for the courts. [Citations omitted.]"

The record discloses that of the persons on the lists, from which members of the grand jury which indicted the defendant were drawn, only those falling in the following categories were exempted: Mothers of children under the age of 12, a woman with a sick husband who required her care, city firemen, a druggist, registered nurses, a doctor, and a minister. It is with these exemptions only that we are concerned on this appeal since no others granted by the statutes are shown by the defendant to have any possible connection with the fact of his indictment for the offense with which he stands charged. We are not, however, to be considered as suggesting that the remaining exemptions from jury service provided by these statutes are not within the power of the Legislature, or that if one or more of them are invalid under the above tests of constitutionality, the improper excusing of one or more prospective grand jurors in reliance upon such statutory exemption would require or justify the

quashing of an indictment returned by a grand jury so chosen. Those questions are not presently before us.

That the public has a substantial interest in the supervision and care of children under the age of 12 years by their mothers is too obvious to require discussion. Thus, to permit such a mother, at her request, to remain free from the time and energy consuming duties of a juror is clearly no violation of the above provisions of the Constitution of this State or those of the United States. *Hoyt v. Florida, supra.*

In *State v. Hogg,* 6 N.C. 319, Ruffin, J., later C.J., speaking for the Court, sustained the exemption from jury duty of a commissioner of navigation, notwithstanding the presence in the Constitution of the provision now found in Article I, § 7, saying:

> "The purpose of the Legislature is to forward and promote the public advantage, by leaving officers, *physicians,* and others to exercise their employments without interruption." (Emphasis added.)

The shortage at the present time of physicians, registered nurses, and registered druggists is a matter of common knowledge and great public concern. The public obviously has a most substantial interest in having all such persons free to engage in the performance of their services which are so vital to the public welfare. These exemptions are clearly within the power of the Legislature.

In *State v. Whitford,* 34 N.C. 99, the Court, speaking through Nash, J., later C.J., sustained an exemption from jury service granted by statute to members of a fire company, saying:

> "The duties which he as a member of the Atlantic Fire Company has to perform are highly important to the community, and to their due performance a regular train of drilling and exercise is necessary; and at any moment, as well in the day as at night, the services of the company may be needed."

The same urgent public necessity today justifies the exemption from jury duty of both regularly employed city firemen and volunteer firemen.

There is reasonable cause for the General Assembly to conclude that it is in the public interest that a minister be at all times available for consultation and advice to members of his congregation and others in need of spiritual comfort or guidance. This need may well be thought to outweigh the benefit of the service which might be rendered by such a minister in the deliberations of a jury.

This Court will take judicial notice of the fact that a wife ren-

ders a service of the utmost importance when she remains at home to take care of her sick husband, and we are not disposed to consider unreasonable the Legislature's conclusion that the resulting benefit to the public outweighs the contribution she might make in the jury box. This exception presents no serious threat to the working of the jury system and its allowance is within the authority of the Legislature.

We find in this record no showing that any constitutional right of this defendant has been violated by the selection of the members of the grand jury which indicted him. The motion to quash the indictment should have been denied.

Reversed.