THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* LAWRENCE SCHWARTZ, Appellant.

Second Department, July 22, 1968.

*Anthony F. Marra* (*Fredric M. Sanders* of counsel), for appellant.

*Aaron E. Koota, District Attorney* (*Frank Di Lalla* of counsel), for respondent.

HOPKINS, J. The defendant was indicted for the crime of assault in the second degree (2 counts) committed on Mark Lowenthal and was convicted after a jury trial of assault in the third degree. The question before us presents the application of the rule in *Miranda* v. *Arizona* (384 U. S. 436) to statements made by the defendant to the police.

Lowenthal testified at the trial that he had visited Lucille Gluck at her home at 56 Martense Street, Brooklyn, New York, on March 28, 1966. In the room at the time were Gerald Kay and the defendant. Lowenthal testified that, as he walked toward the bed on which Lucille Gluck was lying, he heard Kay say, ''Let's kill him.'' Immediately he was struck on the head with a hammer, though he did not see who wielded the weapon. He said that, as he half turned to face Kay and the defendant, he was struck by the defendant; and that Kay grappled with him. Kay and the defendant then left the room.

Police Officer Wilfred Campbell testified that, as he approached 56 Martense Street in answer to a report of an assault, he saw the defendant leaving the building. He asked the defendant whether he lived there and, when the defendant answered in the negative, he asked whether the defendant had been in the building. The defendant replied that he had just left the building at 58 Martense Street, adjoining 56 Martense Street.

At this point the defendant moved for a mistrial on the ground that the People had submitted through Campbell's testimony an incriminating admission of the defendant, notice of which had not been given to the defendant prior to trial pursuant to section 813-f *et seq.* of the Code of Criminal Procedure. The defendant's motion was denied, the court ruling that the utterance made to Campbell was not an admission or a confession, but an exculpatory statement.

The defendant took the stand on his own behalf and testified that, when he entered Lucille Gluck's room at 56 Martense Street, he was seized by Kay, who, bidding him to be quiet, threatened him with a hammer. When Lowenthal later walked into the room, the defendant said that he tried to prevent Kay from hitting Lowenthal with the hammer, but failed. When Kay ran out, the defendant testified that he followed in an attempt to catch him. The defendant returned to the building, saw police at the room and walked out of the building a second time. When accosted by Campbell, he was frightened and told the police officer that he had not been in the building at 56 Martense Street.

On cross-examination, the defendant testified that he did not know why Kay attacked Lowenthal. He was then asked whether he had told Campbell after arrest that the occupants in the room had been discussing Lowenthal before the latter arrived and that " they wanted money because Lucille was going to be evicted, and he [Lowenthal] was supposed to be a soft touch. " To this line of questioning the defendant's counsel objected, but the objection was overruled, and the defendant then testified that he had made that statement to Campbell.

The question raised by the defendant on appeal relates to the admissibility and use of the defendant's statements to Campbell. The defendant argues that, both because of the failure of the People to establish that the warnings required under *Miranda* v. *Arizona* (384 U. S. 436, *supra*) had been pronounced to him before he uttered the statements in reply to the officer's questions, and because of the failure of the People to comply with the provisions of section 813-f of the Code of Criminal Procedure, the statements could not be used against him at the trial. The People urge, on the other hand, first, that the original statement in which the defendant denied his presence at 56 Martense Street was intended to exculpate the defendant and therefore was not subject to section 813-f; and, secondly, that the *Miranda* warnings need not be imparted where the statement is made under circumstances not evincing that the defendant is in custody. As to the second statement, the People, while conceding that it was taken when the defendant was held in custody, strive to sustain its use on the ground that it was not introduced as proof of the fact, but was merely included in the cross-examination of the defendant as impeaching material (cf. *People* v. *Kulis*, 18 N Y 2d 318).

The defendant's challenge to the admission of the first statement based on *Miranda* is without foundation. Campbell's questioning at the building was no more than the pursuit of a general investigation; the defendant was not in custody or under the threat of apparent compulsion, tactics which *Miranda* forbids, unless accompanied by the required warnings (see *Miranda* v. *Arizona*, 384 U. S. 436, 477, *supra; People* v. *Rodney P.* [*Anonymous*] 21 N Y 2d 1; cf. *People* v. *Shivers*, 21 N Y 2d 118). Nonetheless, the defendant's claim based on the protection afforded him under section 813-f has substance.

Section 813-f of the Code of Criminal Procedure, formalizing the dictates of *People* v. *Huntley* (15 N Y 2d 72), directs that, where the People " intend to offer a confession or admission in evidence upon a trial," the District Attorney must give written notice of such intention to the defendant. Upon receipt

of the notice, the defendant may move for the suppression of the confession or admission as evidence (Code Crim. Pro., § 813-g). The failure to give the prescribed notice deprives the People of the evidentiary use of the statement (*People* v. *Lee,* 27 A D 2d 700). The statute applies to statements in the form of admissions reflecting a consciousness of guilt (*People* v. *Hill,* 17 N Y 2d 185, 189; *People* v. *Nadile,* 26 A D 2d 765). That the statement may have been intended by the defendant to exculpate himself from an accusation of the crime does not avoid the necessity for compliance by the People with the statute. What the defendant may believe would detour the police into other avenues of investigation and in directions away from him may become doubly damning when the falsity of the ruse is uncovered and a motive by the defendant to falsify is then inferred. Indeed, during his summation in this case, the District Attorney pointed to the obvious effort of the defendant to mislead the police as evidence of guilt (cf. 2 Wigmore, Evidence [3d ed.], § 277).

The statute's purpose is, of course, to grant the defendant the opportunity to prove before trial that his incriminating statement was made by him involuntarily. For constitutional reasons, we read the statute broadly to include within its scope all incriminating statements, whether intended by the defendant as exculpatory or not when made, which the People expect to use at the trial (cf. *People* v. *Ross,* 21 N Y 2d 258). Hence, the court below was in error in not excluding the statement when it was offered by the People without compliance with the requirements of section 813-f.

As to the second statement obtained by the police subsequent to the defendant's arrest, we think that the People's failure to establish that the *Miranda* warnings had been given nullified the People's power to use the statement for impeachment purposes. The defendant's testimony under direct examination did not refer to his knowledge of the reason for the attack on Lowenthal or to any conversation with the others in the room before Lowenthal's arrival concerning an attempt to obtain money from him. The defendant's cross-examination by the People elicited the testimony which the People thereafter in the same cross-examination sought to demonstrate was inconsistent with, and consequently discredited by, the answers which he had made under the postarrest interrogation by the police and rendered inadmissible under *Miranda.*

We recognize that it has been said that a statement illegally obtained from a defendant, not employed or employable by the People as part of its direct case, may be the basis for an

assault on his credibility if he testifies on his own behalf contrary to the contents of the statement (*People* v. *Kulis,* 18 N Y 2d 318, 322, *supra*). Though the illegality prevents the admission of the statement into evidence, yet the defendant cannot " provide himself with a shield against contradiction of his untruths " (*Walder* v. *United States,* 347 U. S. 62, 65). But it also must be noted that *Kulis,* relating to a pre-*Miranda* trial, touched the use of a statement taken from the defendant in violation of the principle stated in *Escobedo* v. *Illinois* (378 U. S. 478).

Both in *Kulis* and *Walder,* however, the defendant's own testimony on direct examination opened the inquiry to his truthfulness on matters which were extraneous to the crime for which he was on trial. In *Walder,* for example, the defendant, on trial for the possession of heroin, not only denied possession of the particular capsule which was the subject of the indictment, but also denied that he had ever possessed any narcotics other than as medicines. Justice FRANKFURTER made the distinction clear when he said (*Walder* v. *United States,* 347 U. S. 62, 65, *supra*): " Take the present situation. Of his own accord, the defendant went beyond a mere denial of complicity in the crimes of which he was charged and made the sweeping claim that he had never dealt in or possessed any narcotics. Of course, the Constitution guarantees a defendant the fullest opportunity to meet the accusation against him. He must be free to deny all the elements of the case against him without thereby giving leave to the Government to introduce by way of rebuttal evidence illegally secured by it, and therefore not available for its case in chief. Beyond that, however, there is hardly justification for letting the defendant affirmatively resort to perjurious testimony in reliance on the Government's disability to challenge his credibility. "

In *Agnello* v. *United States* (269 U. S. 20) the facts resembled the case before us. A can of cocaine had been illegally seized in Agnello's home. On cross-examination Agnello was asked whether he had ever seen narcotics before; on his denial, the Government sought to introduce the can of cocaine into evidence in order to discredit Agnello. His conviction was reversed, because the illegal evidence could no more be used to discredit Agnello than it could be used affirmatively as part of the Government's case against him. Agnello had not strayed beyond the limits of the indictment in his denials of the charges against him in his direct examination; he had not placed his credibility in the balance by a general claim of innocence.

Likewise, in the case before us, the People first drew the denials from the defendant which were then attacked as contradictions of his inadmissible statement. We think that these tactics are not approved by *Kulis* and *Walder*, but rather are condemned by *Agnello*.

Accordingly, the judgment should be reversed, on the law, and a new trial ordered. The findings of fact below have been affirmed.

BELDOCK, P. J., CHRIST, BRENNAN and MARTUSCELLO, JJ., concur.

Judgment of the Supreme Court, Kings County, rendered April 20, 1967, reversed, on the law, and new trial ordered. The findings of fact below have been affirmed.