THE PEOPLE OF PUERTO RICO, Petitioner, *v.* SUPERIOR COURT
OF PUERTO RICO, PONCE PART, EDWIN MELÉNDEZ
GRILLASCA, JUDGE, Respondent.

No. 0-69-4. Decided April 9, 1969.

*J. F. Rodríguez Rivera, Acting Solicitor General,* and *Américo
Serra, Assistant Solicitor General,* for petitioner. Respondent
did not appear.

MR. JUSTICE BLANCO LUGO delivered the opinion of the Court.

"When the individual is first subjected to police interrogation while in custody at the station or otherwise deprived of his freedom of action in any significant way," is the

talismanic phrase which determines the applicability, as to the category of place, of the doctrine elaborated in *Escobedo v. Illinois*, 378 U.S. 478 (1964) and in *Miranda v. Arizona*, 384 U.S. 436 (1966), which was adopted by this Court in *Rivera Escuté v. Delgado, Warden*, 92 P.R.R. 746 (1965). In the two subsequent pronouncements of the Federal Supreme Court about this point the concept of police custody is defined to include not only detention in the police station, but also any other detention, even though it is not for the commission of the offense of which he is suspected and for which he is subsequently prosecuted, *Mathis v. United States*, 391 U.S. 1 (1968), and even in defendant's own home, when he is questioned while being incommunicado. *Orozco v. Texas*, 394 U.S. 324, 37 U.S.L. Week 4260 (March 25, 1969). In the same trajectory, we had already applied, in *People v. Superior Court*, 96 P.R.R. 386 (1968), the ruling of *Rivera Escuté*, *supra*, on a suspect from whom some calligraphic samples were taken in his home which were later used as evidence in a prosecution for forgery.

■ The situations involved in these cases did not imply great difficulty in their facts for determining whether the defendant was actually under police custody at the time he made the statements or the incriminatory action. It seems clear that once the suspect is placed under arrest, even if he is not in the police station, *but being effectively deprived of his freedom*, it is necessary to make the pertinent warnings to guarantee the rights against self-incrimination and legal assistance. *Orozco v. Texas, supra; Mathis v. United States, supra.*[1]

---

[1] The dissenting opinions, in the case of Mathis as well as in that of Orozco, refer to the fact that the doctrine in *Miranda* was adopted to guard "against what was thought to be the corrosive influence of practices which station house interrogation make feasible" as prolonged detention, while the suspect is incommunicado, in the absence of impartial observers, in a

∴ In order to decide the instant case[2] it only remains for us to consider whether the rule of exclusion is extensive to statements made by the defendant when interrogated during the routine investigations for traffic violations carried out by

forbidding atmosphere productive of physical or psychological coercion. The majority in *Orozco* rejected this narrow construction and summarized the scope of *Miranda* as "The opinion iterated and reiterated the absolute necessity for officers interrogating people 'in custody' to give the described warnings."

[2] The Deputy Solicitor General summarizes the facts thus:

"During the night of November 10, 1967, Pedro H. Morales Vargas, while driving a motor vehicle along the highway from Yauco to Guayanilla, ran over a person who was walking along the roadside. Morales Vargas stopped his automobile and told the youth Bendramil Oliveras—who was walking along the highway—that he was the owner of the car and that he was willing to pay for 'the expenses which might arise'. Moments later a policeman, Ramón Ortiz Rodríguez, who was patrolling this section, arrived at the scene of the accident. The policeman was informed of the occurrence of the accident by the youth Bendramil Oliveras and Johnny Lugo. When they were questioned by the policeman these two youths pointed at Morales Vargas as the person who was driving the vehicle. Then, policeman Ortiz Rodríguez asked Morales Vargas if he actually was driving the vehicle, and the latter answered yes and that he was the owner of the automobile. While talking with Morales Vargas policeman Ortiz noticed that the former smelled strongly of liquor and that he was not standing firmly on his feet looking as though he was going to fall backwards or forward. Also when he was asked for his driver's license 'he stood up to look for it in the wallet, having it in his hands, he was saying that he did not have it.' Upon noticing this, policeman Ortiz arrested Morales Vargas making the legal warnings as to the taking of blood or urine samples. The arrested person stated that he wanted to submit to the blood analysis and was taken to a hospital. There he refused to have his blood taken unless a lawyer was present. He was taken to the police station of Guayanilla where a complaint was filed against him. From there he was transferred by the police before the judge of Peñuelas. In that town the arrested man retained the services of an attorney, who advised him to have the blood or urine sample taken. The judge of Peñuelas then ordered to have him taken to the Health Center of that town to have the sample taken. There the blood sample was taken two hours and forty-five minutes after he had been arrested.

"For the facts previously related, Morales Vargas was accused before the Superior Court, Ponce Part, of a violation of § 5-801 of the Vehicle and Traffic Law of Puerto Rico, consisting of said violation in that the aforementioned defendant was driving, on November 10, 1967, a motor vehicle while being under the influence of intoxicating liquor. It was also alleged in the information that, as a result of the aforesaid violation, the

the police at the scene of the crime.[3] It should be pointed out first that several provisions of the Vehicle and Traffic Law require the driver's identification under certain circumstances: § 4-101, 9 L.P.R.A. § 781, requires any driver involved in an accident to stop and stay at the scene of the accident until he fulfills the following duties *"to give his name, address, license number or identification of his vehicle to the person aggrieved or to any person accompanying him, or to a peace officer;"*[4] (italics ours), § 4-103, 9 L.P.R.A. § 783, re-

defendant caused serious bodily injuries to Francisco Rodríguez Santiago.

"On March 15, 1968 the hearing of the case against defendant was held before Judge Edwin Meléndez Grillasca. Once the evidence for the prosecution and for the defense was heard and gauged, the judge found defendant guilty and convicted of the offense of driving a motor vehicle in a state of intoxication. The convict was ordered to pay a three hundred dollar fine and his driver's license was suspended for the term of one year. At defendant's request the court set aside the sentence and postponed its pronouncement.

"Subsequently the defendant requested the reconsideration of the judgment rendered alleging that the court erred in allowing the policeman who investigated the facts to testify on the admission made by defendant in the sense that he was driving the automobile, without warning him first about his right to remain silent and to have the advice of a lawyer, as held in the cases of *Escobedo* v. *Illinois*, 378 U.S. 478; *Miranda* v. *Arizona*, 384 U.S. 436 and *Rivera Escuté* v. *Delgado, Warden*, 92 P.R.R. 746 (1965). By order entered on May 24, 1968, the court set aside the judgment of conviction and ordered a new trial in the case because it believed that the admission of the defendant to the policeman, in the sense that he was driving the vehicle, was incriminating and that the policeman, before asking about this particular, should have made the warnings required by the cases of Escobedo and Miranda."

[3] In *People* v. *Beltrán Santiago, ante*, p. 89, we held the admittance in evidence of the statements of defendant to the effect that he was driving an automobile, because he was not under arrest or under police custody, when "the defendant was not even asked about the offense of driving a vehicle under the influence of intoxicating liquor." See, *People* v. *Sánchez*, Cr. 68-156, Judgment of April 7, 1969.

[4] In *People* v. *Padilla*, 36 P.R.R. 710 (1927), the validity of a similar provision was held, § 12(b) of Act No. 75 of April 13, 1916 (Sess. Laws, p. 140), against an alleged violation of the constitutional provision on self-incrimination. The reasoning of State Courts was adopted in the sense that it was a simple police regulation, and reference was made to the power of the Legislature to fix conditions to the "privilege" of using public highways.

quires that in the case of an accident not investigated by the police at the place of its occurrence and which has resulted in injury to another person or in damages to other person's property shall report the accident to the nearest police station; § 4-104, 9 L.P.R.A. § 784, provides that the driver of a vehicle involved in an accident resulting in damage to property whose owner is not present at the scene of the accident shall try to locate said owner identifying himself and showing said owner the license authorizing him to drive. In general terms, § 5-1121(a), 9 L.P.R.A. § 1151(a), provides that every driver shall, at the behest of a peace officer, stop immediately, "identify himself . . . ."

All considerations, including the practical ones, lead us to the inevitable conclusion that the interrogatory to which a person who violates the traffic laws is subjected where the police officer is only orienting himself to discover the identity of that person does not fall within the doctrine in *Miranda*. It is not a question in conformance with the reasoning of the majority, of a custody which deprives of freedom in any significant way, nor on the other hand do the circumstances of the detention in the police station, which according to the minority, gave use to the rule of exclusion concur. Any other solution would seriously hinder the process of the simple investigation required in these cases. It is also undeniable that the identification of the offender, although necessary for the prosecution, does not establish any integral element of the offense itself. In *Miranda* at pp. 477–478 it is said:

"Our decision is not intended to hamper the traditional function of police officers in investigating crime. [Citation.] . . . General on-the-scene questioning as to facts surrounding a crime or other general questioning of citizens in the fact-finding process is not affected by our holding . . . . In such situations the compelling atmosphere inherent in the process of in-custody interrogation is not necessarily present."

Practically all the interpretations of the Federal and State Courts agree with this view.[5] See Annotation, *Necessity of Informing suspect of rights under privilege against self-incrimination, prior to police interrogation*, 10 A.L.R.3d 1054 (1966); Graham, *What is "Custodial Interrogation?": California's Anticipatory Application of Miranda v. Arizona*, 14 U.C.L.A. L. Rev. 59 (1966). Notes, 16 Buffalo L. Rev. 439 (1967), 18 W. Res. L. Rev. 1777 (1967), 45 N.C.L. Rev. 206 (1966), Utah L. Rev. 687 (1966).

The warnings not being necessary under the circumstances of the instant case, the order of the Superior Court, Ponce Part, of May 24, 1968, will be set aside and remanded for further proceedings.

---

[5] *Clark* v. *United States*, 400 F.2d 83 (9th Cir. 1968); *United States* v. *Bagdasian*, 398 F.2d 971 (4th Cir. 1968); *United States* v. *Thomas*, 396 F.2d 310 (2d Cir. 1968); *Allen* v. *United States*, 390 F.2d 476 (D.C. Cir. 1968); *Williams* v. *United States*, 381 F.2d 20 (9th Cir. 1967); *Evans* v. *United States*, 377 F.2d 535 (5th Cir. 1967); *United States* v. *Kuntz*, 265 F.Supp. 543 (1967); *State* v. *Gillespie*, 241 A.2d 239 (N.J. 1968); *State* v. *Gosser*, 236 A.2d 377 (1967); *Dixon* v. *State*, 232 A.2d 538 (Md. 1967); *Gaudio* v. *State*, 230 A.2d 700 (Md. 1967); *Duffy* v. *State*, 221 A.2d 653 (Md. 1966); *People* v. *Phinney*, 239 N.E.2d 515 (N.Y. 1968); *People* v. *Gilbert*, 154 N.W.2d 800 (Mich. 1967); *Schnepp* v. *State*, 437 P.2d 84 (Nev. 1968); *Lung* v. *State*, 420 P.2d 158 (Okla. 1966); *Paulk* v. *State*, 211 So.2d 591 (Fla. 1968); *State* v. *Oxentine*, 154 S.E.2d 529 (N.C. 1967); *Tate* v. *State*, 413 S.W.2d 366 (Tenn. 1967); *People* v. *Ward*, 72 Cal. Rptr. 46 (1968); *People* v. *Gant*, 70 Cal. Rptr. 801 (1968); *People* v. *Chavez*, 68 Cal. Rptr. 759 (1968); *People* v. *Wright*, 66 Cal. Rptr. 95 (1968); *People* v. *Butterfield*, 65 Cal. Rptr. 765 (1968); *People* v. *Hazel*, 60 Cal. Rptr. 437 (1967); *People* v. *Beasley*, 58 Cal. Rptr. 485 (1967); *People* v. *Alexander*, 293 N.Y.S.2d 138 (1968); *People* v. *Schwartz*, 292 N.Y.S.2d 518 (1968); *People* v. *P.*, 286 N.Y.S.2d 225 (1967).