GWENDOLYN HOFFMAN LAMB, EXECUTRIX OF THE ESTATE OF THOMAS WADE LAMB v. WEDGEWOOD SOUTH CORPORATION, STATLER HILTON, INC., HILTON INNS, INC., W. H. WEAVER, W. H. WEAVER CONSTRUCTION COMPANY, INC., HARRY R. DUDLEY, JR., INDIVIDUALLY, LOUIS RIGHTMIER, INDIVIDUALLY, THOMAS H. B. MORRISETTE, INDIVIDUALLY, DUDLEY, RIGHTMIER, MORRISETTE AND ASSOCIATES, A PROFESSIONAL ASSOCIATION, DARRELL TEAGUE, W. E. GRIFFIN AND TED CRADDOCK

No. 156A82

(Filed 31 May 1983)

1. **Appeal and Error § 20— discretionary review of denial of motions for summary judgment error**

The Court of Appeals erred in reviewing the trial court's denial of some of the defendants' motions for summary judgment since plaintiff's claims against the defendants rest on their allegedly negligent acts as well as their responsibility under agency principles, and negligence claims are rarely susceptible of summary adjudication and should ordinarily be resolved by trial of the issues.

Lamb v. Wedgewood South Corp.

**2. Appeal and Error § 20 — exercise of discretion in reviewing denial of summary judgment motion proper**

Where defendants' motion for summary judgment was based solely on their contention that G.S. 1-50(5) barred a crossclaim as a matter of law, it was appropriate for the Court of Appeals to treat the defendants' purported appeal from denial of the motion as a petition for certiorari and, in its discretion, to review the trial court's order.

**3. Architects § 3; Limitation of Actions § 4.2 — actions against contractor or architect — statute of limitations**

G.S. 1-50(5), the statute of limitations which limits the potential liability of architects, contractors, and perhaps others in the construction industry for improvements made to real property, barred plaintiff's claim against the architects since it was brought more than six years after the architects performed and furnished their services.

**4. Architects § 3; Limitation of Actions § 4.2 — action against architect — crossclaim by possessor of property — statute of limitations applicable**

Through G.S. 1-50(5), the legislature intended to prohibit all claims and crossclaims against designers and builders filed beyond the six-year period even if these claims or crossclaims are filed by persons in possession and control. The second sentence is meant to preserve claims brought *against* persons in possession and control of an improvement to real property who might also have designed or built the improvement.

**5. Architects § 3; Limitation of Actions § 4.2 — actions against contractor or architect — statute of limitations — constitutionality**

G.S. 1-50(5), which protects persons who perform certain services in the construction of improvements to real property, does not violate the equal protection provisions of either our state or the federal constitutions since there is a reasonable basis for the legislative classification in the statute.

**6. Architects § 3; Limitation of Actions § 4.2 — actions against contractor or architect — statute of limitations — no special emolument or privilege**

G.S. 1-50(5) does not create a special emolument or privilege within the meaning of the constitutional prohibition since the legislature could reasonably adjudge that the public welfare would best be served by the classification the statute makes. Art. I, § 32 of the N.C. Constitution.

**7. Architects § 3; Courts § 1; Limitation of Actions § 4.2 — actions against contractor or architect — statute of limitations — constitutionality — barring death claim before it occurred**

G.S. 1-50(5) does not violate Art. I, § 18 of our state's constitution by barring a claim before the injury giving rise to the claim occurs since the statute's effect is that, unless the injury occurs within the six-year period, there is no cognizable claim.

Justices MARTIN and FRYE did not participate in the consideration or decision of this case.

ON appeal from decision of the Court of Appeals, one judge dissenting, 55 N.C. App. 686, 286 S.E. 2d 876 (1982), affirming in part and reversing in part orders entered by *Judge Bailey* on 16 September 1980 and by *Judge Cornelius* on 3 November 1980 in ORANGE Superior Court.

*Smith, Anderson, Blount, Dorsett, Mitchell and Jernigan, by James G. Billings, for plaintiff appellant.*

*Spears, Barnes, Baker and Hoof, by Alexander H. Barnes, for defendant appellants Wedgewood South Corporation and Hilton Inns, Inc.*

*Emanuel and Emanuel, by Robert L. Emanuel and George W. Kane III, for defendant appellees Harry R. Dudley, Jr., Louis Rightmier and Thomas H. B. Morrisette, individually, and Dudley, Rightmier, Morrisette and Associates, P.A.*

EXUM, Justice.

The principal questions presented in this appeal involve the interpretation of General Statute 1-50(5)[1] and whether the statute is constitutional. We conclude that the statute bars all claims asserted in this case against defendant architects and that the statute is constitutional. We also conclude that the Court of Appeals should not have considered certain denials of motions for summary judgment made by some defendants.

Plaintiff is the widow of Thomas Wade Lamb, M.D. and the duly appointed executor of his estate. Dr. Lamb was a registered guest at the Hilton Inn in Greensboro, North Carolina, on 25 August 1977. In the early morning of 25 August Dr. Lamb apparently became involved in an altercation on the sixth floor of the motel. Dr. Lamb either fell or was pushed through a panel glass window near the elevator on the sixth floor. He fell to the ground and died from injuries suffered in the fall.

---

1. The statute, set out in full in the text of the opinion, essentially provides that claims for injury, property damage or wrongful death arising out of defective conditions of improvements to real property must be brought against defendants who design, plan or construct the improvements no later than six years from the "furnishing of such services." The statute directs that this limitation "shall not apply" to persons in possession and control of the improvements.

In 1965-66 W. H. Weaver Construction Company, Inc., of which W. H. Weaver is the principal stockholder, both of which will be hereinafter referred to as Weaver, constructed the building housing the hotel. Dudley, Rightmier, Morrisette and Associates, an architectural firm in Virginia, designed the building. Wedgewood South Corporation (Wedgewood) purchased the building on 23 December 1966 and as a franchisee of Statler Hilton Inns, Inc., and later Hilton Inns, Inc. (Hilton Inns), operated the hotel at the time of Dr. Lamb's death.

Plaintiff filed this action for wrongful death on 20 June 1978 against Wedgewood, alleging negligent maintenance of the glass window and negligent failure to provide protective devices. After answering the complaint, Wedgewood on 25 August 1978 filed a third party complaint seeking either contribution or indemnification from Weaver, and the architects, Harry R. Dudley, Jr. and Louis Rightmier, individually. Wedgewood alleged that if it were negligent, then these additional defendants were primarily negligent in, respectively, constructing and designing the building. On 13 December 1978 Weaver answered Wedgewood's third party complaint and asserted crossclaims seeking either contribution or indemnification from the architects on the ground of negligent design. On 3 May 1979 Judge McKinnon in Orange Superior Court, allowed the architects' motion to dismiss all claims against them for lack of personal jurisdiction.

On 11 July 1979 plaintiff filed an amended complaint which incorporated by reference plaintiff's original claim against Wedgewood and asserted claims against: (1) architects Dudley, Rightmier, and Morrisette, individually, and "Dudley, Rightmier, Morrisette and Associate," for negligent design; (2) Weaver, for negligent construction; (3) Darrell Teague, a bartender in the hotel lounge and allegedly an agent of Wedgewood, Hilton Inns, and the operator of the hotel lounge, W. E. Griffin, for assaulting Dr. Lamb and negligently pushing him through the window; (4) Ted Craddock, the hotel's night manager, for negligently failing to intervene adequately in the altercation between Teague and Dr. Lamb; (5) W. E. Griffin, as Teague's principal under the respondeat superior doctrine; (6) Wedgewood as Craddock's and Teague's principal under the respondeat superior doctrine; and (7) Hilton Inns as franchisor of Wedgewood for negligent mainte-

nance and on the theory that it was "estopped to deny" liability for the negligence of Teague and Craddock.

On 6 September 1979 Hilton Inns answered and crossclaimed against Weaver and the architects[2] for indemnity or contribution. The architects moved to dismiss all claims against them, asserting lack of personal jurisdiction, insufficiency of process, and *res judicata.* Judge Brewer denied these motions to dismiss on 3 June 1980. Wedgewood, Hilton Inns, Craddock, Griffin and Teague moved for summary judgment; Judge Bailey denied these motions on 16 September 1980. On 22 September 1980 the architects moved for summary judgment on all claims against them. Judge Cornelius granted this motion on 3 November 1980 only as to plaintiff's claim on the ground that G.S. 1-50(5) barred her claim. Judge Cornelius denied, however, the motion as to Hilton Inns' crossclaim on the ground the crossclaim was not barred by the statute.

Plaintiff appealed to the Court of Appeals from the entry of summary judgment for the architects. The architects sought to appeal the denial of their motion for summary judgment as to Hilton Inns' crossclaim. Hilton Inns, Wedgewood, and Craddock excepted to Judge Bailey's denials of their motions for summary judgment, and cross-assigned this ruling as error.

The Court of Appeals reviewed not only Judge Cornelius' entry of summary judgment against plaintiff on her claim against the architects, but all denials of summary judgment as well. A majority of the Court of Appeals concluded: (1) The architects' motion for summary judgment on plaintiff's claim was properly granted and their motion on Hilton Inns' crossclaim should have been allowed on the ground that both claims were barred by G.S. 1-50(5); therefore, Judge Cornelius' denial of this motion as to the crossclaim was reversed and his allowance of the motion as to plaintiff's claim was affirmed. (2) Craddock's motion for summary judgment should have been allowed since the forecast of evidence failed to show any negligence on his part; therefore, Judge Bailey's denial of this motion was reversed. (3) Wedgewood's and Hilton Inns' motions for summary judgment on plaintiff's claims

---

2. Hilton Inns actually crossclaimed only against Dudley and Rightmier as individuals and against the architectural firm as an entity.

were correctly denied by Judge Bailey on the ground that the forecast of evidence indicated plaintiff could make a *prima facie* case against these defendants; therefore, these rulings were affirmed. Judge Wells dissented from conclusions (1) and (2) on the grounds, respectively, that G.S. 1-50(5) was unconstitutional and the evidentiary forecast indicated plaintiff could make a *prima facie* case against Craddock.

I.

[1] We first conclude that the Court of Appeals erred in reviewing the trial court's denials of the Craddock, Wedgewood, and Hilton Inns motions for summary judgment. "[T]he *denial* of a motion for summary judgment is not appealable." *Waters v. Qualified Personnel, Inc.*, 294 N.C. 200, 208, 240 S.E. 2d 338, 344 (1978) (emphasis original); *Motyka v. Nappier*, 9 N.C. App. 579, 176 S.E. 2d 858 (1970). Further, "if an appealing party has no right of appeal, an appellate court on its own motion should dismiss the appeal even though the question of appealability has not been raised by the parties themselves." *Bailey v. Gooding*, 301 N.C. 205, 208, 270 S.E. 2d 431, 433 (1980).

Apparently the Court of Appeals believed it should exercise its discretion in favor of reviewing these denials of summary judgment. We think this exercise of discretion was inappropriate for the same reason we declined to exercise our supervisory powers to review the trial court's order setting aside a summary judgment for the defendant in *Waters v. Qualified Personnel, Inc., supra,* 294 N.C. at 209, 240 S.E. 2d at 344:

> [The reason] is that the trial court and the parties will be given an opportunity to develop more fully the facts in this dispute and to put the merits of the claim in bolder relief than they now are. Even if defendant should ultimately lose at trial, an appeal at that point would give the reviewing court a more complete picture, factually and legally, of the entire controversy between the parties. . . . [A] fuller development of the facts in this case . . . may well . . . shed more light than we now have in this record . . . .

Plaintiff's claim against Craddock rests on his allegedly negligent acts. Her claims against Wedgewood and Hilton Inns rest on their allegedly negligent acts as well as their responsibility, under

agency principles, for the acts of Craddock and Teague. Negligence claims are rarely susceptible of summary adjudication, and should ordinarily be resolved by trial of the issues. *Vassey v. Burch*, 301 N.C. 68, 73, 269 S.E. 2d 137, 140 (1980). The disputed agency relationships here, particularly the relationship between Hilton Inns, as franchisor, and Wedgewood, as franchisee, are complex and need fuller factual development than we have in this record.

The Court of Appeals, insofar as the parties purported to appeal from the trial court's denials of the Craddock, Wedgewood and Hilton Inns motions for summary judgment, should have dismissed the appeals, and it should have declined to exercise its discretionary authority to review them. We vacate, consequently, the rulings of the Court of Appeals on these motions, without expressing any opinion on their merits.

[2] The Court of Appeals correctly exercised its discretion to consider the denial of the architects' summary judgment motion as to the Hilton Inns' crossclaims. Although the trial court made the finding required under Rule 54(b) of the North Carolina Rules of Civil Procedure before a final judgment can be entered, *i.e.*, "that there is no just reason for delay of the entry of a final judgment," this finding does not make the denial of summary judgment immediately appealable because it is not a final judgment. *Tridyn Industries, Inc. v. American Mutual Ins. Co.*, 296 N.C. 486, 491, 251 S.E. 2d 443, 447 (1979). But the architects' motion is based solely on their contention that G.S. 1-50(5) bars the crossclaim as a matter of law. The issue is strictly a legal one and its resolution is not dependent on further factual development. *Cf. Tridyn Industries, Inc. v. American Mutual Ins. Co., supra* (certiorari denied because further factual development on extent and nature of damages needed to determine extent of coverage, if any, provided by insurance policy). Furthermore, the issue of the applicability and interpretation of this statute is squarely presented by plaintiff's appeal from the part of the order awarding summary judgment to the architects. Thus, it was appropriate for the Court of Appeals to treat the architects' purported appeal as a petition for certiorari and, in its discretion, to review the trial court's order. We consider, therefore, in Part III, the correctness of the Court of Appeals' determination of this issue.

II.

[3]   The statute, G.S. 1-50(5), as applicable to this case,[3] was enacted in 1963. Act of June 19, 1963, ch. 1030, § 1, 1963 N.C. Sess. Laws 1300, 1300-01. It provides:

>        No action to recover damages for any injury to property, real or personal, or for an injury to the person, or for bodily injury or wrongful death, arising out of the defective and unsafe condition of an improvement to real property, nor any action for contribution or indemnity for damages sustained on account of such injury, shall be brought against any person performing or furnishing the design, planning, supervision of construction or construction of such improvement to real property, more than six (6) years after the performance or furnishing of such services and construction. This limitation shall not apply to any person in actual possession and control as owner, tenant or otherwise, of the improvement at the time the defective and unsafe condition of such improvement constitutes the proximate cause of the injury for which it is proposed to bring an action.

This statute, like many others enacted throughout the nation, is a "statute of repose," which this Court has recognized constitutes a substantive definition of, rather than a procedural limitation on, rights. *Bolick v. American Barmag Corp.*, 306 N.C. 364, 293 S.E. 2d 415 (1982). The Court of Appeals noted the substantive quality of G.S. 1-50(5) in *Smith v. American Radiator & Standard Sanitary Corp.*, 38 N.C. App. 457, 461-64, 248 S.E. 2d 462, 465-67 (1978), *disc. rev. denied*, 296 N.C. 586, 254 S.E. 2d 33 (1979), *overruled on other grounds, Love v. Moore*, 305 N.C. 575, 581, 291 S.E. 2d 141, 146 (1982):

>        Statutes similar to, and in many cases identical with, our statute G.S. 1-50(5) have been adopted in a large number of jurisdictions. *See*, Comment, *Limitation of Action Statutes for Architects and Builders—Blueprint for Non-action*, 18 Cath. U.L. Rev. 361 (1969). Because of their unique manner of limiting ac-

---

3. General Statute 1-50(5) was substantially rewritten in 1981. Act of June 22, 1981, ch. 644, § 1, 1981 N.C. Sess. Laws 924, 924-25. The amended version became effective on 1 October 1981, but was made inapplicable to litigation pending at that time. *Id.* at § 2.

**Lamb v. Wedgewood South Corp.**

tions, these statutes have been referred to as 'hybrid' statutes of limitations, having potentially both a substantive and a procedural effect. On the one hand, the date of injury is not a factor used in computing the running of the time limitation. The statute thus acquires its substantive quality by barring a right of action even before injury has occurred if the injury occurs subsequent to the prescribed time period. On the other hand, the statute's operation is similar to that of an ordinary statute of limitations as to events occurring before the expiration of the prescribed time period. Whether in such case the statute is to be interpreted as replacing entirely the statute of limitation which would otherwise be applicable or is to be interpreted as operating in conjunction with such other statute, is the principal question presented by this appeal. Courts of other States which have confronted this problem have held that the two statutes should be interpreted as operating in conjunction with each other.

. . . .

Following the interpretation placed upon the statute by the Supreme Courts of New Jersey and Virginia, we hold that G.S. 1-50(5) is to be interpreted in conjunction with G.S. 1-52(5) [a three-year statute of limitations for personal injuries running from the time the action accrued] so that both statutes may be given effect. So interpreted, G.S. 1-50(5) provides an outside limit of six years 'after the performance or furnishing of such services and construction' of improvements to real property for the bringing of an action coming within the terms of that statute. Within that outside limit, G.S. 1-52(5) continues to operate and G.S. 1-50(5) does not serve to extend the time for bringing an action otherwise barred by the three year statute. In the present case, plaintiff's action against the appellant, Industrial Maintenance and Mechanical Service, Inc., was commenced more than three years after his action accrued, and the action as against this defendant is barred by G.S. 1-52(5).

We agree with this analysis.

General Statute 1-50(5), like its counterparts in other states, is designed to limit the potential liability of architects, contrac-

tors, and perhaps others in the construction industry for improvements made to real property. As commentators have noted:

> In the late 1950's and early 1960's, many architects and contractors felt threatened by the abolition of the privity requirement and the advent of 'discovery' provisions in tort statutes of limitation. In response, various architects' and contractors' trade associations sponsored legislation to curtail the time period during which an architect or contractor might be held liable for a negligent act. A total of forty-four architects' and contractors' statutes of repose have been passed by various state legislatures.

McGovern, *The Variety, Policy and Constitutionality of Product Liability Statutes of Repose*, 30 Am. U.L. Rev. 579, 587 (1981) (footnotes omitted); *see also* Sission and Kelley, *Statutes of Limitations for the Design and Building Professions—Will They Survive Constitutional Attack*, 49 Ins. Counsel J. 243, 243 (1982); Comment, *Limitation of Action Statutes for Architects and Builders—Blueprints for Non-Action*, 18 Cath. U.L. Rev. 361, 362-64 (1969); Comment, *Recent Statutory Developments Concerning the Limitations of Actions Against Architects, Engineers, and Builders*, 60 Ky. L.J. 462, 464-65 (1972); Annot., *Validity and Construction, as to Claim Alleging Design Defects, of Statute Imposing Time Limitations Upon Action Against Architect or Engineer for Injury or Death Arising Out of Defective or Unsafe Condition of Improvement to Real Property*, 93 ALR 3d 1242 (1979). Although these statutes vary in their specific time limitations and wording, they all set an outside time limit, generally running from the date of substantial completion of the service or improvement, after which actions may not be brought for personal injuries or property damage allegedly caused by deficiencies in the improvements to real property.[4]

---

4. The specific outside time limits vary from as few as four years to as many as fifteen years. *See, e.g.,* Ark. Stat. Ann. §§ 37-237 to -244 (Cum. Supp. 1981) (4 years but if injury or death occurs in third year have one year from injury to file action) (5 years to bring action for property damage); Colo. Rev. Stat. § 13-80-127 (Supp. 1982) (10 years with 2 years from injury to bring action if injury in ninth or tenth year); D.C. Code Ann. § 12-310 (1981) (10 years); Fla. Stat. Ann. § 95.11(3)(c) (West 1982) (15 years); Mass. Gen. Laws Ann. ch. 260, § 2B (West 1983) (6 years for tort action); Miss. Code Ann. § 15-1-41 (Supp. 1982) (10 years); Va. Code § 8.01-250 (1977) (5 years).

Since plaintiff's claim was brought more than six years after the architects performed and furnished their services, the statute by its terms clearly bars the plaintiff's claim against the architects. We conclude the statute by its terms also bars Hilton Inns' crossclaim against the architects for contribution or indemnity. The parties in their briefs to this Court do not seem to take a contrary position.[5]

[4] Both the trial court and the Court of Appeals, however, took the position that if Hilton Inns was in actual possession and control of the premises at the time of Dr. Lamb's death, then the six-year period of limitation would have no application to its crossclaim against the architects. Presumably these courts relied for this position on the second sentence of G.S. 1-50(5), which states: "This limitation shall not apply to any person in actual possession and control as owner, tenant or otherwise, of the improvement at the time the defective and unsafe condition of such improvement constitutes the proximate cause of the injury for which it is proposed to bring an action." The trial court apparently believed that evidence at trial might demonstrate that Hilton Inns was in possession and control; it, therefore, denied the architects' motion for summary judgment on the crossclaim. The Court of Appeals, on the other hand, found "no evidence that Hilton Inns . . . was in actual possession." 55 N.C. App. 686, 696, 286 S.E. 2d 876, 883. The Court of Appeals therefore concluded that Hilton Inns was not excluded from the application of the six-year period and was barred from asserting its crossclaim by the statute.

*Sellers v. Friedrich Refrigerators, Inc.*, 283 N.C. 79, 194 S.E. 2d 817 (1973), can be read to support the proposition that the second sentence in the statute refers to owners *as plaintiffs*. Because of the facts and the issue in *Sellers*, it should not be so read, and we reject such an interpretation of the statute.

The plaintiffs in *Sellers*, owners in possession and control of their home, brought action against both the installer and design-

---

5. Hilton Inns' primary position is that it was not in possession and control of the premises. But *it could have* argued that if it should be found, contrary to its contentions, to have been in possession and control, then the statute's second sentence excludes its crossclaim from the six-year limitation. It makes no such argument before us, although it did so in its brief to the Court of Appeals.

er-builder of a heating system for fire damage to their home allegedly caused by the system. The plaintiffs alleged negligent design, construction and installation of the system. The installation was completed in the summer of 1965. The home was destroyed by fire in January 1967 and the action was instituted on 8 October 1968, more than three years from the date of installation. The question addressed by the Court was whether plaintiffs' claim was governed by G.S. 1-52(5), the three-year statute of limitations, or by G.S. 1-50(5), the six-year statute. Plaintiffs argued that G.S. 1-50(5) gave them six years from the date of installation to bring their claim and the more restrictive three-year provision did not govern the case. Defendant argued to the contrary. The Court concluded that the three-year statute of limitations applied to bar plaintiffs' claim since, under the law as it then existed, plaintiffs' claim was said to have accrued at the time the heating system was installed rather than at the time the damage occurred. *See Matthieu v. Piedmont Natural Gas Co.*, 269 N.C. 212, 152 S.E. 2d 336 (1967). In concluding that G.S. 1-50(5) did not apply to plaintiffs' claim, the Court relied on the second sentence of the statute. The Court construed the sentence as meaning that the six-year period of limitation had no application to claims brought by plaintiffs in actual possession and control of the improvement.

It is apparent that the Court in *Sellers* construed G.S. 1-50(5) in an entirely different manner than is currently considered its appropriate interpretation. It viewed G.S. 1-50(5) as a statute intended to benefit claimants suing designers and builders. Instead of recognizing that the six-year limit was a substantive limitation defining the right to sue, the Court viewed it as an expansion of the applicable procedural limitation period from three to six years. The Court defined the issue before it as whether the plaintiffs, who were owners in possession and control, could invoke the benefit of what it saw as a more favorable six-year period of limitations. The Court reasoned that persons in possession and control were in the best position to discover defective improvements to the property, thus the legislature must have intended to deny them what it saw as the benefit of the statute. 283 N.C. at 86, 194 S.E. 2d at 821-22.

Since *Sellers* both this Court in *Bolick v. American Barmag Corp., supra,* 306 N.C. 364, 293 S.E. 2d 415, and the Court of Ap-

peals in *Smith v. American Radiator and Sanitary Corp., supra*, 38 N.C. App. 457, 248 S.E. 2d 462, have approved an analysis which recognizes that statutes such as G.S. 1-50(5) have a substantive as well as a procedural effect. If this analysis of the relationship between G.S. 1-50(5), the substantive statute of repose, and the ordinary procedural limitation had been applied in *Sellers*, the plaintiffs' claim would have been barred by G.S. 1-52(5), the applicable three-year procedural limitation under the law governing accrual of claims as it then was. The result would have been the same, and there would have been no need to consider whether the second sentence of G.S. 1-50(5) applied to plaintiffs' claim. It would be anomalous to use the *Sellers* holding as authority for the proposition that the six-year period in the statute is not a barrier to a claim brought by persons in possession and control against designers and builders when it is a bar to actions by third parties.

The result would be wrong for two reasons. First, it would have the effect of giving owners in possession a more favorable position than third parties who are less able to discover defects. This is a result the *Sellers* Court clearly intended to avoid.

Second, to hold that the six-year limitation affords no protection to designers and builders from claims brought by those in actual possession and control of realty would emasculate the statute and destroy the "repose" that the legislature intended to give. Third parties injured by defects in improvements cannot claim against architects, for example, beyond the six-year period under the statute. They can and in all cases probably would, however, sue persons in possession and control at the time of the injury. But if persons in possession and control are excluded from the ambit of the statute, they could crossclaim against the architects for contribution or indemnity. Yet the first sentence of the statute expressly prohibits "any action for contribution or indemnity" beyond the six-year period. We think it clear that the legislature intended to prohibit all claims and crossclaims against designers and builders filed beyond the six-year period even if these claims or crossclaims are filed by persons in possession and control. The second sentence is meant to preserve claims brought *against* persons in possession and control of an improvement to real property who might also have designed or built the improvement. If, of course, persons in possession and control neither designed nor built the improvement, then the first sentence would by its own terms have no application.

Lamb v. Wedgewood South Corp.

Two cases from other jurisdictions that have considered the meaning of exclusionary sentences like the second sentence of our statute have construed them to preserve claims brought *against* persons in possession and control, not to preserve claims brought *by* such persons. *See Salesian Society v. Formigli Corp.*, 120 N.J. Super. 493, 295 A. 2d 19 (1972), *aff'd* 124 N.J. Super. 270, 306 A. 2d 466 (1973); *Good v. Christensen*, 527 P. 2d 223 (Utah 1974). Only *Deschamps v. Camp Dresser & McKee, Inc.*, 113 N.H. 344, 306 A. 2d 771 (1973), of the cases we have found or been referred to, holds that an exclusionary sentence like ours preserves claims brought *by* persons in possession and control. The New Hampshire Court reasoned:

> The statute by its very terms is a limitation on the bringing of actions against the persons who designed, planned, supervised or constructed the facility. When it says that 'this limitation shall not apply' it clearly is referring to the limitation on plaintiffs as they are the ones who bring 'action to recover damages.' The exception would be meaningless if it were read to apply to actions against owners, tenants and others in possession and control, as defendants, because they are not included in the class against whom actions are barred by the six-year limitation, namely persons 'performing or furnishing the design, planning, supervision of construction or construction of the improvement. . . .' There would be no need to exclude those in possession from a class in which they were never included in the first place. On the other hand those in possession and control would be included in the class of persons who would be barred from bringing suit if it were not for the exception, which was intended to remove them from that class.

*Id.* at 346-47, 306 A. 2d at 773. We think this reasoning is fallacious. If those in possession and control also happen to have designed or built the improvement, a not uncommon occurrence, then claims against them brought beyond the limiting period would be barred were it not for the exclusionary sentence. The purpose of the sentence is to preserve these kinds of claims by exempting them from the limiting period.

### III.

The real argument on whether plaintiff's claim and Hilton Inns' crossclaim are barred rests on plaintiff's contention that the statute is unconstitutional. Thus we reach the most significant issue in this appeal—the constitutionality of G.S. 1-50(5). Specifically, plaintiff contends the statute is unconstitutional because it violates the Equal Protection Clauses of the Fourteenth Amendment to the United States Constitution and article I, section 19 of the North Carolina Constitution; the prohibition against "exclusive or separate emoluments or privileges" in article I, section 32 of the North Carolina Constitution; and the guarantee of article I, section 18 of the North Carolina Constitution that "every person for an injury done him in his lands, goods, person, or reputation shall have remedy by due course of law." These questions are of first impression for this Court, although they have been much litigated in a substantial majority of the other states with statutes and constitutions similar, if not identical, to ours. Because these jurisdictions have reached different conclusions, there is authority for both plaintiff's and the architects' positions. Our own principles of statutory construction and the most persuasive precedents from other jurisdictions lead us to conclude that General Statute 1-50(5) is a constitutional exercise of legislative authority.

In addition to considering the context in which G.S. 1-50(5) was enacted, we draw on several well-established principles for determining the constitutionality of any enactment. First, there is a presumption in favor of constitutionality; reasonable doubts must be resolved in favor of sustaining the act. *Mitchell v. North Carolina Industrial Development Financing Authority*, 273 N.C. 137, 144, 159 S.E. 2d 745, 750 (1968); 3 N.C. Index 3d, Constitutional Law § 10.2 (1976). Second, "[t]he State's Constitution is a restriction of powers; those powers not surrendered are reserved to the people to be exercised through their representatives in the General Assembly. Therefore, so long as an act is not forbidden, the wisdom of the enactment is exclusively a legislative decision." *Mitchell v. North Carolina Industrial Development Financing Authority, supra*, 273 N.C. at 133, 159 S.E. 2d at 750.

A.

[5]   Plaintiff's first constitutional challenge to G.S. 1-50(5) is that it violates the equal protection clauses of both our state and federal constitutions. Plaintiff argues the statute impermissibly distinguishes between architects, engineers, and contractors, who are protected from liability beyond the six-year period, and materialmen, suppliers, manufacturers and persons in actual possession and control of the property, who are not.

The statute, as we have noted, does protect persons who perform certain services in the construction of improvements to real property. Without attempting to determine definitively all classes of persons whom it may protect, we think the statute was aimed primarily at those who design and build real property improvements and who are not in actual possession and control of the improvement when an injury to person or property is caused by some defect in the improvement. The statute does not protect any person who at the time of injury is in actual possession and control of the improvement. We assume for purposes of addressing the constitutional argument, without deciding, that the statute offers no protection to materialmen, suppliers or manufacturers of goods used in the improvement.[6]

This kind of legislative classification does no violence to either our state or federal equal protection guarantees so long as it is reasonable. The equal protection clauses do not take "from the state the power to classify persons or activities when there is

----

6. Defendant architects contend the 1981 revision of G.S. 1-50(5) rendered moot the question whether materialmen, manufacturers, and suppliers were within the groups protected by the original statute. *See* G.S. 1-50(5)b.9. (1981). This argument is without merit since the subsequent revision does not obviate the necessity of interpreting the legislature's intent in and the constitutionality of the original act, which is the version applicable to plaintiff. Furthermore, in light of this Court's decision in *Raftery v. W. C. Vick Construction Co.*, 291 N.C. 180, 230 S.E. 2d 405 (1976), in which we held that an action for personal injuries brought by a person not in privity with the manufacturer of the product causing the injury does not accrue until the injury is sustained, it appears there was a significant period when manufacturers of materials for construction did not enjoy the same protection against claims as did designers and builders. At least until G.S. 1-50(6) was enacted, Products Liability Act, ch. 654, §§ 2, 7, 8, 1979 N.C. Sess. Laws 687, 689, 690, or the amendment to G.S. 1-50(5) became effective, Act of June 22, 1981, ch. 644, § 2, 1981 N.C. Sess. Laws 924, 925, there was not a specific statute of repose enacted for the benefit of manufacturers.

a reasonable basis for such classification and for the consequent difference in treatment under the law." *Guthrie v. Taylor,* 279 N.C. 703, 713-14, 185 S.E. 2d 193, 201 (1971), *cert. denied,* 406 U.S. 920 (1972). Although the reasonableness of a particular classification is a question for the court, there is a presumption that the classification is valid because such classifications are largely matters of legislative judgment. *ASP Associates v. City of Raleigh,* 298 N.C. 207, 226, 258 S.E. 2d 444, 456 (1979). Therefore, "a court may not substitute its judgment of what is reasonable for that of the legislative body, particularly when the reasonableness of a particular classification is fairly debatable." *Id.* "The equal protection clauses do not require perfection in respect of classifications. In borderline cases, the legislative determination is entitled to great weight." *State v. Greenwood,* 280 N.C. 651, 658, 187 S.E. 2d 8, 13 (1972).

Several recent, well-considered decisions in other jurisdictions have noted differences between the work of designers and builders, on one hand, and suppliers, materialmen, and manufacturers, on the other. The decisions conclude that these differences form a reasonable basis for legislative classification. The difference between "builders" and "suppliers" was well stated by the Pennsylvania Supreme Court in *Freezer Storage, Inc. v. Armstrong Cork Co.,* 476 Pa. 270, 277, 382 A. 2d 715, 719 (1978):

> Suppliers, who typically produce items by the thousands, can easily maintain high quality-control standards in the controlled environment of the factory. A builder, on the other hand, can pre-test his designs and construction only in limited ways — actual use in the years following construction is their only real test. Further, every building is unique and far more complex than any of its component parts. Even in the most uniform-looking suburban subdivision, each house stands on a separate plot of land; each lot may have slightly different soil conditions; one may be near an underground stream; and so forth. The Legislature can rationally conclude that the conditions under which builders work are sufficiently difficult that limitations should be placed on their liabilities, but not on the liabilities of suppliers.
>
> This Act of 1965 draws the sort of rational distinction, based on real differences in the business world, which our cases have consistently upheld.

*Freezer Storage* also pointed out the differences between "builders" and "owners," 476 Pa. at 276, 382 A. 2d at 718 (footnote omitted):

> It is manifestly rational to adjust time periods for liability for acts performed according to the substantive scope of the liability involved. The scope of liability of the class of builders differs significantly from that of the class of owners. First, the class of persons to whom builders may be liable is larger than the class to which owners may be liable. Landowners may be liable to others who come onto their land. Builders, however, may be liable both to the landowners and to others who use the land. Second, a builder may be liable for construction defects under various legal theories — contract, warranty, negligence, and perhaps strict liability in tort. Landowner liability for such defects, on the other hand, typically lies only in tort, unless the landowner is a lessor, in which case he is liable only for events occurring while the tenant is in possession. See generally, Restatement (Second) of Property, Landlord & Tenant, Chapters 10 & 17-19 (1977). Third, landowners can ordinarily avoid liability by taking adequate care of their land and structures and by regulating the number and type of persons entering the land and regulating the conditions of entry. The builder has no such control over his product after relinquishing it to the landowner. Landowner's liability is also controlled by the myriad of common law rules limiting liability to such classes as 'undiscovered trespassers,' 'mere licensees' and so forth. Builder's insurance and owner's insurance structures and pricing are also different. For any of these reasons the Legislature might rationally conclude that builders should remain liable for their mistakes for only 12 years after they complete construction, but that a landowner should remain liable for injuries caused on his land for as long as he is in possession. See 12 P.S. § 65.1.

Other recent decisions have relied on these or similar differences to justify the statutory classification now before us. *See, e.g., Yarbro v. Hilton Hotels Corp.,* 655 P. 2d 822 (Colo. 1982); *Burmaster v. Gravity Drainage District No. 2 of the Parish of St. Charles,* 366 So. 2d 1381 (La. 1978); *Klein v. Catalano,* 386 Mass. 701, 437 N.E. 2d 514 (1982); *McMacken v. State,* 320 N.W. 2d 131,

*aff'd on rehearing,* 325 N.W. 2d 60 (S.D. 1982); *Anderson v. Fred Wagner and Roy Anderson, Jr., Inc.,* 402 So. 2d 320 (Miss. 1981). The Louisiana Supreme Court in *Burmaster, supra,* 366 So. 2d at 1386, noted:

> Suppliers and manufacturers, who typically supply and produce components in large quantities, make standard goods and develop standard processes. They can thus maintain high quality control standards in the controlled environment of the factory. On the other hand, the architect or contractor can pre-test and standardize construction designs and plans only in a limited fashion. In addition, the inspection, supervision and observation of construction by architects and contractors involves individual expertise not susceptible of the quality control standards of the factory.

The Michigan Supreme Court in *O'Brien v. Hazelet & Erdal,* 410 Mich. 1, 17-18, 299 N.W. 2d 336, 342 (1980), correctly justified the statutory distinction in part on the following basis:

> The Legislature may also have thought it necessary to reduce the potential liability of architects and engineers in order to encourage experimentation with new designs and materials. Innovations are usually accompanied by some unavoidable risk. Design creativity might be stifled if architects and engineers labored under the fear that every untried configuration might have unsuspected flaws that could lead to liability decades later.

We recognize that there are a number of decisions in which similar statutory classifications have been struck down as being arbitrary, unreasonable and constitutionally impermissible. Perhaps the leading and most well-considered case for this position is *Skinner v. Anderson,* 38 Ill. 2d 455, 231 N.E. 2d 588 (1967). *See also, Fujioka v. Kam,* 55 Hawaii 7, 514 P. 2d 568 (1973); *Loyal Order of Moose, Lodge 1785 v. Cavaness,* 563 P. 2d 143 (Okla. 1977); *Broome v. Truluck,* 270 S.C. 227, 241 S.E. 2d 739 (1978); *Kallas Millwork v. Square D Co.,* 66 Wis. 2d 382, 225 N.W. 2d 454 (1975).

The overwhelming majority of the most recent cases, however, which considered the constitutional equal protection challenge to statutes like ours have sustained the statutes. *See,*

*e.g., Adair v. Koppers Co., Inc.,* 541 F. Supp. 1120 (N.D. Ohio 1982); *Barnhouse v. City of Pinole,* 133 Cal. App. 3d 171, 183 Cal. Rptr. 881 (1982); *Mullis v. Southern Co. Services, Inc.,* 250 Ga. 90, 296 S.E. 2d 579 (1982); *Twin Falls Clinic and Hospital Building Corp. v. Hamill,* 103 Idaho 19, 644 P. 2d 341 (1982); *Terry v. New Mexico State Highway Comm.,* 98 N.M. 119, 645 P. 2d 1375 (1982). *But see, Henderson Clay Products, Inc. v. Edgar Wood & Associates,* 122 N.H. 800, 451 A. 2d 174 (1982).

In essence we think the better reasoned decisions are those which have sustained the statutory classification against an equal protection constitutional attack. We conclude there is a reasonable basis for the legislative classification in the statute. Therefore, the classification does not violate the equal protection provisions of either our state or the federal constitutions.

B.

**[6]** Closely related to plaintiff's equal protection argument is her claim that G.S. 1-50(5) grants "exclusive or separate emoluments or privileges" to the persons it protects in violation of article I, section 32 of the North Carolina Constitution, which provides: "*Exclusive Emoluments.* No person or set of persons is entitled to exclusive or separate emoluments or privileges from the community but in consideration of public services."

In *State v. Knight,* 269 N.C. 100, 152 S.E. 2d 179 (1967), this Court considered whether a statute which exempted individuals engaged in certain occupations from jury duty violated our constitutional prohibition against separate emoluments or privileges. Concluding that the statutory exemptions did not violate the provision, the Court said, *id.* at 107-08, 152 S.E. 2d at 183-84:

Obviously, this provision does not forbid all classifications of persons with reference to the imposition of legal duties and obligations.

. . . .

Therefore, the limitation . . . does not apply to an exemption from a duty imposed upon citizens generally if the purpose of the exemption is the promotion of the general welfare, as distinguished from the benefit of the individual, and if there is a reasonable basis for the Legislature to conclude

that the granting of the exemption would be in the public interest. Here, as in questions arising under the exercise of the police power pursuant to the requirement of due process of law, the principle to be applied is that declared by Moore, J., for the Court, in *State v. Warren*, 252 N.C. 690, 114 S.E. 2d 660 [1960], where it is said:

'The presumption is that an act passed by the Legislature is constitutional, and it must be so held by the courts unless it appears to be in conflict with some constitutional provision. [Citations omitted.] The legislative department is the judge, within reasonable limits, of what the public welfare requires, and the wisdom of its enactments is not the concern of the courts. As to whether an act is good or bad law, wise or unwise, is a question for the Legislature and not for the courts—it is a political question. The mere expediency of legislation is a matter for the Legislature, when it is acting entirely within constitutional limitations, but whether it is so acting is a matter for the courts. [Citations omitted.]'

As we have already demonstrated, the classifications in G.S. 1-50(5) are based on what the legislature could reasonably determine were valid distinctions between the groups protected by the statute and those not protected. The legislature could reasonably adjudge that the public welfare would be best served by the classification it chose to make. Therefore, the classification does not create a special emolument or privilege within the meaning of the constitutional prohibition.

A substantial majority of jurisdictions with constitutional provisions similar to our article I, section 32, have concluded that statutes similar to G.S. 1-50(5) do not violate their "special emoluments" prohibition. *Yarbro v. Hilton Hotels Corp., supra,* 655 P. 2d 822; *Twin Falls Clinic and Hospital Building Corp. v. Hamill, supra,* 103 Idaho 19, 644 P. 2d 341; *Burmaster v. Drainage Dist. No. 2 of the Parish of St. Charles, supra,* 366 So. 2d 1381; *Anderson v. Fred Wagner & Roy Anderson, Jr., Inc., supra,* 402 So. 2d 320; *Rosenberg v. Town of North Bergen,* 61 N.J. 190, 293 A. 2d 662 (1972); *Freezer Storage, Inc. v. Armstrong Cork Co., supra,* 476 Pa. 270, 382 A. 2d 715; *but see, Skinner v. Anderson, supra,* 38 Ill. 2d 455, 231 N.E. 2d 588; *Pacific Indemnity Co. v. Thompson-Yeager, Inc.,* 260 N.W. 2d 548 (Minn. 1977).

We agree with the majority position on this question.

## C.

[7] Plaintiff's final argument on constitutionality is that G.S. 1-50(5) violates article I, section 18 of the North Carolina Constitution which states:

> *Courts shall be open.* All courts shall be open; every person for an injury done him in his lands, goods, person, or reputation shall have remedy by due course of law; and right and justice shall be administered without favor, denial, or delay.

The building containing the allegedly defective window through which Dr. Lamb fell to his death in August 1977 was completed in 1966. The six-year statutory period thus expired several years before Dr. Lamb's death. Plaintiff argues, "The effect of the statutory scheme therefore would be to bar a death claim before the death ever occurred." Therefore, plaintiff says, the effect of the statute is to deny her a remedy "for an injury done" in violation of our Constitution.

We do not believe it correct to say that the statute bars a claim before the injury giving rise to the claim occurs. The statute's effect is that unless the injury occurs within the six-year period, there is no cognizable claim. It is as the Supreme Court of New Jersey stated in *Rosenberg v. Town of North Bergen, supra,* 61 N.J. at 199-200, 293 A. 2d at 667, with reference to a similar New Jersey statute:

> It does not bar a cause of action; its effect, rather, is to prevent what might otherwise be a cause of action, from ever arising. . . . The injured party literally has *no* cause of action. The harm that has been done is *damnum absque injuria* — a wrong for which the law affords no redress. The function of the statute is thus rather to define substantive rights than to alter or modify a remedy. The Legislature is entirely at liberty to create new rights or abolish old ones as long as no vested right is disturbed.

A number of courts in other jurisdictions with a constitutional provision practically identical to ours have sustained statutes practically identical to ours against the challenge that the statute abolished a claim that would have been otherwise cognizable at common law. In Pennsylvania, for example, a provision of the state constitution, Pa. Const. art. 1, § 11, provides:

> All courts shall be open; and every man for an injury done him in his lands, goods, person or reputation shall have remedy by due course of law, and right and justice administered without sale, denial or delay.

The Pennsylvania Supreme Court concluded that the Pennsylvania statute which precluded claims against designers and builders of real property improvements brought more than twelve years after the improvement was completed did not violate its constitution. *Freezer Storage, Inc. v. Armstrong Cork Co., supra,* 476 Pa. at 279-80, 382 A. 2d at 720. The Court said:

> We have in the past upheld against an Article 1, Section 11 challenge a statute which abolished a common law cause of action without providing a substitute. In *Sherwood v. Elgart,* 383 Pa. 110, 117 A. 2d 899 (1955), a statute which excuses innkeepers from liability to guests for certain losses for which they would have been liable at common law was challenged because it destroyed a common law cause of action without providing a substitute. We rejected this contention.

> In interpreting this constitutional provision, we should remember that no one 'has a vested right in the continued existence of an immutable body of negligence . . . . [T]he practical result of a [contrary] conclusion would be the stagnation of the law in the face of changing societal conditions.' *Singer v. Sheppard,* 464 Pa. 387, 399, 346 A. 2d 897, 903 (1975) (upholding statute which substituted mandatory 'no fault' auto insurance for certain causes of action in tort). Indeed we have long explicitly recognized that societal conditions occasionally require the law to change in a way that denies a plaintiff a cause of action available in an earlier day:

>> '[W]hat today is a trespass, may, by development of law, not be so tomorrow. Therefore, it will not do to say . . ., since, once upon a time, at common law, [an event] would

have been a tort, giving rise to a claim for damages, that at the present day such an act has all the attributes of a common-law trespass . . . .'

*Jackman v. Rosenbaum Co.*, 263 Pa. 158, 175, 106 A. 238, 244 (1919), aff'd, 260 U.S. 22, 43 S.Ct. 9, 67 L.Ed. 107 (1922) (upholding the power of both the Legislature and the courts to modify remedies available to landowners involved in party-wall disputes). In *Fadgen v. Lenkner*, 469 Pa. 272, 365 A. 2d 147 (1976), we abolished the time-honored cause of action for criminal conversation, without explicit mention of this constitutional provision.

Section 22 of article 1 of the Louisiana Constitution contains this provision:

All courts shall be open, and every person shall have an adequate remedy by due process of law and justice, administered without denial, or unreasonable delay, for injury to him in his person, property, reputation, or other rights.

Yet the Louisiana Supreme Court found no constitutional infirmity in its statute which barred claims against designers, planners, and supervisors of construction of real property improvements more than ten years after acceptance of the work by the owner. *Burmaster v. Gravity Drainage District No. 2, supra,* 366 So. 2d 1381. The Louisiana Court said, *id.* at 1387-88:

Where an injury has occurred for which the injured party has a cause of action, such cause of action is a vested property right which is protected by the guarantee of due process. *See Gibbes v. Zimmerman,* 290 U.S. 326, 332, 54 S.Ct. 140, 78 L.Ed. 342 (1933); *Pritchard v. Norton,* 106 U.S. 124, 132, 1 S.Ct. 102, 27 L.Ed. 104 (1882). However, where the injury has not yet occurred and the cause of action has not yet vested, the guarantee of due process does not forbid the creation of new causes of action or the abolition of old ones to attain permissible legislative objectives. *See Silver v. Silver,* 280 U.S. 117, 122, 50 S.Ct. 57, 74 L.Ed. 221 (1929). Our jurisprudence has recognized the validity of legislative regulation of causes of action, including replacement and even abolition, that one person may have against another for personal injuries.

. . . .

The application of La.R.S. 9:2772 herein does not bar plaintiff's cause of action; rather, it prevents what might otherwise be a cause of action from ever arising. Thus, injury or death occurring after the preemptive period established by the statute forms no basis for recovery against those whom the statute protects and a cause of action never vests. The harm that has been done (allegedly attributable to Fromherz) is *damnum absque injuria*—a loss which does not give rise to an action for damages against the person causing it.

The Mississippi Supreme Court has reached the same result in face of an "open courts" constitutional provision almost identical to ours. *Anderson v. Fred Wagner and Roy Anderson, Jr., Inc., supra,* 402 So. 2d 320. *See also Adair v. Koppers Co., Inc., supra,* 541 F. Supp. 1120; *Yarbro v. Hilton Hotels Corp., supra,* 655 P. 2d 822; *Klein v. Catalano, supra,* 386 Mass. 701, 437 N.E. 2d 514; *McMacken v. State, supra,* 320 N.W. 2d 1311. *But see Overland Construction Co., Inc. v. Sirmons,* 369 So. 2d 572 (Fla. 1979); *Saylor v. Hall,* 497 S.W. 2d 218 (Ky. 1973).

In *Osborn v. Leach,* 135 N.C. 628, 47 S.E. 811 (1904), the question was whether our "London Libel Law," now codified as General Statutes 99-1 and 99-2, violated the "open courts" provision of our Constitution. G.S. 99-1 to -2 (1979). This law abolished the right of a libeled plaintiff to recover punitive damages from "a newspaper or periodical" if these entities published a timely retraction and if the libel was published in good faith. The Court in *Osborn* concluded that the legislature could constitutionally abolish the common law right to recover punitive damages under these circumstances. The court stressed, however, the proposition that the statute still permitted the recovery of "actual damages." It interpreted these damages to be all ordinary, compensatory damages, including actual pecuniary loss, damages for pain, mental suffering, inconvenience, and for injury to reputation. The Court, in dictum, stated that had the legislation abolished plaintiff's right to recover these kinds of compensatory damages it would have considered the act in violation of the "open courts" provision. *Id.* at 639-40, 47 S.E. at 815.

Here we do not have to decide whether the legislature could constitutionally abolish all tort claims against builders and de-

signers arising out of improvements they built or designed. We refrain from holding, as our Court of Appeals did and as other courts have done, that the legislature may constitutionally abolish altogether a common law cause of action. Neither do we mean to say that it cannot. The question is not before us. For the legislature has not absolutely abolished all claims against builders and designers arising out of improvements they built or designed. Rather, it has established a time period beyond which such claims may not be brought even if the injury giving rise to the claim does not occur until the time period has elapsed.[7]

We are confident that this condition to the legal cognizability of a claim does not violate the constitutional guarantee that for every "injury done" there shall be a "remedy." The "remedy" constitutionally guaranteed "for an injury done" is qualified by the words "by due course of law." This means that the remedy constitutionally guaranteed must be one that is legally cognizable. The legislature has the power to define the circumstances under which a remedy is legally cognizable and those under which it is not. "[T]he General Assembly is the policy-making agency of our government, and when it elects to legislate in respect to the subject matter of any common law rule, the statute supplants the common law rule and becomes the public policy of the State in respect to that particular matter." *McMichael v. Proctor*, 243 N.C. 479, 483, 91 S.E. 2d 231, 234 (1956), *quoted in Bolick v. American Barmag Corp., supra*, 306 N.C. at 370, 293 S.E. 2d at 420.

Furthermore, since plaintiff's cause of action had not accrued at the time this legislation was passed, no vested right is involved. "[N]o person has a vested right in a continuance of the common or statute law. . . ." *Pinkham v. Unborn Children of Jather Pinkham*, 227 N.C. 72, 78, 40 S.E. 2d 690, 694 (1946). " '[A]

---

7. We recognize the legislature might pass a statute of repose that had a time period so short it would effectively abolish all potential claims. Such is not the case with the six-year limitation at issue here. We note the following relevant statistic which was set forth in *Klein v. Catalano, supra*, 386 Mass. at ---, 437 N.E. 2d at 521, n. 13: "According to evidence presented at the Hearings on H.R. 6527, H.R. 6678, and H.R. 11544 before Subcommittee No. 1 of the House Committee on the District of Columbia, 90th Cong., 1st Sess. 28 (1967), 93% of all claims against architects are brought within six years of the substantial completion of the construction. Collins, Limitation of Action Statutes for Architects and Builders — An Examination of Constitutionality [29 Fed'n of Ins. Counsel Q. 41, 47-8 & n. 29 (1978)]."

right cannot be considered a vested right unless it is something more than such a mere expectancy as may be based upon an anticipated continuance of the present general law . . . .' " *Id.* at 79, 40 S.E. 2d at 695 (quoting Cooley's Constitutional Limitations, Vol. II, page 749); *see also, Duke Power v. Carolina Environmental Study Group, Inc.*, 438 U.S. 59, 88, n. 32 (1978). We conclude, therefore, that the statute does not violate Article I, section 18, of our state's constitution.

CONCLUSION

The result is: That part of the Court of Appeals' decision which affirms the denial of the Teague, Craddock and Hilton Inns motions for summary judgment against plaintiff is vacated because these rulings were not appealable and should not have been considered in the Court of Appeals' discretion. The rulings of the trial court on these motions remain in effect. So much of the Court of Appeals' decision which concludes that the architects' motion for summary judgment on plaintiff's claim was properly allowed by the trial court is affirmed. So much of the Court of Appeals' decision which concludes that the architects' motion for summary judgment on Hilton Inns' crossclaim should have been allowed is correct for the reasons we have given rather than the reasons given by the Court of Appeals; therefore this part of the decision is modified and affirmed. The decision of the Court of Appeals is, therefore,

Vacated in part; affirmed in part; modified and affirmed in part.

Justices MARTIN and FRYE did not participate in the consideration or decision of this case.