RAYNOR STEEL ERECTION, A PARTNERSHIP, AND GERALD NELSON RAYNOR
AND EVA RAYNOR, PARTNERS D/B/A RAYNOR STEEL ERECTION v. YORK
CONSTRUCTION COMPANY AND THE ATLANTIC STATES BANKCARD
PROPERTIES CORPORATION

No. 8610SC329

(Filed 30 December 1986)

Negligence § 2— cause of steel framing collapse—genuine issue of material fact

  In plaintiff subcontractor's action to recover for the erection of the steel
framing for a building being constructed by defendant general contractor after
the framing collapsed in a high wind, a genuine issue of material fact was
presented as to the cause of the collapse, and the trial court erred in entering
an order of summary judgment dismissing plaintiff subcontractor's complaint
and allowing defendant general contractor to recover under its counterclaim,
where defendant's forecast of evidence tended to show that the framing col-
lapsed in wind of only 27 miles per hour due to plaintiff's failure adequately to
brace the framing in accordance with requirements of the N. C. Building Code
and plaintiff's failure to tighten various bolts that held the different parts of
the framing together, and where plaintiff's forecast of evidence contradicted
that of defendant by tending to show that it properly tightened and braced the
framing, that defective materials furnished by defendant were used upon in-
structions by defendant, and that the structure fell because defendant's
footings, fabricated steel and design were defective.

APPEAL by plaintiffs from *Bailey, Judge.* Order entered 3
January 1986 in Superior Court, WAKE County. Heard in the
Court of Appeals 23 September 1986.

  Defendant York Construction Company, the general contrac-
tor, architect and engineer for a four-story steel supported
building that was being constructed for the other defendant, con-
tracted to pay plaintiffs $27,999 to erect the steel for the struc-
ture. After plaintiff had erected the steel framing up to the
fourth floor the structure collapsed in a high wind and defendant
York Construction, contending that the collapse was plaintiffs'
fault, refused to pay for the work that had already been done.
Plaintiffs sued under their subcontract to recover $22,999 of the
defendant general contractor and to enforce a lien in that amount
against the defendant property owner. York denied liability and
counterclaimed for damages in the amount of $261,580, alleging
that in erecting the steel plaintiffs failed to follow both the con-
tract terms and approved steel construction practices. Following
discovery and a hearing on motions made by the defendants the

court entered an order of summary judgment dismissing plaintiffs' complaint and allowing defendant York to recover $261,580 of plaintiffs on its counterclaim.

*E. Gregory Stott and Poyner & Spruill, by John L. Shaw and David M. Barnes, for plaintiff appellants.*

*Sanford, Adams, McCullough & Beard, by J. Allen Adams and John J. Butler, for defendant appellee York Construction Company.*

*R. Frank Gray for defendant appellee The Atlantic States Bankcard Properties Corporation.*

PHILLIPS, Judge.

At the hearing on defendants' motions for summary judgment they presented much evidence, expert and otherwise, tending to show that plaintiffs did not properly erect the steel for their building and are liabile to them for the structure's collapse. In gist, their evidence tends to show that the framing collapsed in wind of only 27 miles an hour due to two failures on plaintiffs part—the failure to adequately brace the steel framing, as the North Carolina State Building Code requires, and the failure to tighten various bolts that held the different parts of the framing together. The main question presented by plaintiffs' appeal is whether their forecast of evidence materially contradicts defendants' evidence as to the particulars stated, and thus raises a question of material fact for the jury. We believe that it does and vacate the order of summary judgment.

In pertinent part the affidavit of the plaintiff Gerald Raynor is to the following effect: He has twenty-two years experience in steel construction and is familiar with the generally accepted steel erection practices and procedures in this state. The drawings for many pieces of structural steel used in the building did not show bolt connections and required welding to hold them in place but before the steel could be welded it had to be erected and plumbed. York provided only two anchor bolts for each steel column, installed the bolts in concrete blocks not strong enough for the purpose, and one of the columns could not be firmly attached to an anchor bolt because the bolt was loose inside the block that it was embedded in. He told York Construction's site

superintendent, Mr. Little, that he was concerned that the structural steel had not been designed strong enough, it didn't have sufficient bracing, and the foundation was not strong enough to hold up the steel; Little told him to go ahead with his work and that York wanted the steel erected as soon as possible. During construction he discovered that many pieces of the structural steel were too long or too short and the holes for some connections were too big or misaligned; because of the defects he could not make the steel pieces fit snugly against each other, and the connecting bolts did not fit some of the holes. These fabrication errors were also called to York's attention and he was again told that they were in a hurry to complete the building and he should complete his work without further delays. On 27 July 1984 he had erected basically all of the structural steel and had properly tightened, bolted and braced the structure. He saw the collapsed steel and in many places the two anchor bolts had pulled out of the concrete block causing the columns to fall. In his opinion the structure collapsed because it was not designed properly and because of the fabrication errors and insufficient footings described.

This forecast of plaintiffs' proof at trial clearly raises issues of material fact for a jury and the court's ruling to the contrary is error. It tends to show, *inter alia,* that plaintiffs substantially performed their agreement and duties, and that they properly tightened and braced the frame; that defective materials furnished by defendants were used upon their instructions; and that the structure fell because defendants' footings, fabricated steel and design were defective. Nor is the judgment necessarily correct, as defendants argue, because defendants' proof indicates that the State Building Code was not complied with and there is authority for the proposition that the Code holds the erector strictly liable for properly bracing and tightening a steel frame under construction. *Lindstrom v. Chesnutt,* 15 N.C. App. 15, 189 S.E. 2d 749, *cert. denied,* 281 N.C. 757, 191 S.E. 2d 361 (1972). For plaintiffs' forecast of evidence gives rise to the legal principle that a subcontractor is not liable to his contractor for using the contractor's materials and following the contractor's instructions. *Burke County Public Schools Board of Education v. Juno Construction Corp.,* 50 N.C. App. 238, 273 S.E. 2d 504, *aff'd,* 304 N.C. 187, 282 S.E. 2d 778 (1981); 17A C.J.S. *Contracts* Sec. 515 (1963). But, of course, which of the many legal rules that could apply to the case actual-

ly do so will depend upon the view that the jury takes of the evidence when it is presented to them. Which is why issues involving negligence, proximate cause, reasonableness and the like can seldom be correctly determined by summary judgment. *Lamb v. Wedgewood South Corp.*, 308 N.C. 419, 302 S.E. 2d 868 (1983). Thus, the judgment entered is vacated in all respects.

Vacated.

Judges PARKER and COZORT concur.